**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 07-cv-01815-AP

In re: ANTHONY JAMES SABIA

TEMPORARY ACCOUNTING PERSONNEL OF COLORADO, INC.,
MARTIN J. PLANK, ESQ.
MARTIN J. PLANK, P.C.
STEVEN G. YORK, ESQ.
DWORKIN, CHAMBERS & WILLIAMS, P.C. n/k/a DWORKIN, CHAMBERS,
WILLIAMS, YORK, BENSON AND EVANS, P.C.
JAMES L. AAB, ESQ.
AAB & BOTTS, LLC,

        Appellants and Cross-Appellees,

v.

ANTHONY JAMES SABIA,
JAY JESTER, ESQ. and
KIMBER Z. SMITH, ESQ.,

        Appellees and Cross-Appellants.

---

## ORDER AFFIRMING IN PART AND REVERSING IN PART

---

**Blackburn, J.**

The appellants timely appeal a final judgment of the United States Bankruptcy

Court for the District of Colorado awarding sanctions against the appellants. The

appellants filed an opening brief [#22] on October 10, 2007. The appellees filed a

combined response brief and opening brief in support of their cross-appeal [#26] on

November 5, 2007. The appellants filed a reply brief [#30] on November 27, 2007. The

debtor's counsel also assert a cross-appeal, which they argue in the Response and

Opening Brief of Appellees and Cross-Appellants [#26], filed November 5, 2007. The

cross-appeal concerns the bankruptcy court's denial of portions of the fee applications of the debtor's counsel.   I affirm the orders of the bankruptcy court in part and reverse the orders of the bankruptcy court in part.[1]

## I.  JURISDICTION

Under 28 U.S.C. § 1334, United States District Courts have original jurisdiction in all civil proceedings arising in cases under Title 11, United states Code.  I have jurisdiction to adjudicate this bankruptcy appeal under 28 U.S.C. § 158(a)(1).[2]

## II.  STANDARD OF REVIEW

I am bound by  the bankruptcy court's findings of fact, unless they are clearly erroneous. **Fed. R. Bankr.P. 8013**; *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399 (10th Cir.1986). A finding of fact is clearly erroneous only if the appellate court has the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364 (1948). It is the responsibility of an appellate court to accept the ultimate factual determination of the fact finder, i.e., the bankruptcy court, unless that determination either 1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or 2) bears no rational relationship to the supportive evidentiary data. *Jardine's Professional Collision Repair, Inc. v. Gamble*, 232 B.R. 799, *800 (D. Utah, 1999) (citing *Gillman v. Scientific Research Prods. (In re Mama D'Angelo, Inc.),* 55 F.3d 552, 555 (10th Cir. 1995)(internal citations omitted)); *In re Dinviney*, 225 B.R. 762, *769 (10th Cir. BAP (Okla.), 1998) (internal citations omitted).  I review the bankruptcy court's conclusions of law *de novo. In re Mullet,* 817

---

[1]    The issues raised by and inherent to this appeal are fully briefed, obviating the necessity for oral argument.

[2]    The appellants bring this appeal under 28 U.S.C. § 158(a) and Fed. R. Bankr.P. 8001.

F.2d 677, 678 (10th Cir.1987).

Otherwise, the award of sanctions and the denial of the fee applications of the debtor's counsel are reviewed for an abuse of discretion. **See, e.g., In re Aspen Limousine Service, Inc.**, 198 B.R. 341, 344 (D. Colo.1996). Under the abuse of discretion standard, "'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" **Moothart v. Bell**, 21 F.3d 1499, 1504 (10th Cir.1994) (*quoting* **McEwen v. City of Norman**, 926 F.2d 1539, 1553-54 (10th Cir.1991)). An abuse of discretion occurs when a trial court bases its ruling on a view of the law that is erroneous. **Cooter & Gell v. Hartmarx Corp.,** 496 U.S. 384, 405 (1990). When I apply the abuse of discretion standard, I defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value. **Moothart,** 21 F.3d at 1504.

## III. FACTS

The appellants challenge an order entered by the bankruptcy court imposing sanctions against the appellants, jointly and severally, in the amount of 27,916.96 dollars. *Opening brief* [#22], filed October 10, 2007, Appendix A (bankruptcy court's August 17, 2007, order). Hereafter, I will refer to the bankruptcy court's August 17, 2007, order as the Sanction Order. Appellant, Temporary Accounting Personnel of Colorado, Inc. (TAP), filed a claim in the underlying bankruptcy case, and the debtor, Anthony Sabia, contested the claim. Ultimately, the bankruptcy court denied TAP's claim and awarded sanctions against TAP and its counsel in favor of Sabia, as a sanction for actions taken by TAP and its counsel during the litigation surrounding TAP's

3

claim.  TAP and its counsel are appellants in this case.  I will refer to the appellants

collectively as TAP.

Anthony Sabia, the debtor and one of the appellees, was an employee of TAP.

On March 30, 1998, Sabia and TAP executed an employment agreement.  On October

15, 2002, Sabia resigned his employment with TAP.  TAP later filed suit against Sabia in

District Court in and for the City and County of Denver, Colorado.  TAP sought damages

for Sabia's alleged breaches of the non-compete and confidentiality provisions of the

employment agreement.  Sabia filed bankruptcy under Chapter 13 of the United States

Bankruptcy Code on October 13, 2005, while TAP's Denver District Court case still was

pending.  TAP's claim against Sabia was scheduled as disputed, contingent, and

unliquidated.  TAP filed a proof of claim in Sabia's bankruptcy case, asserting a claim

for 189,773.78 dollars based on an alleged breach of the employment contract.  Sabia

filed an objection and motion to disallow TAP's claim.  In his motion, Sabia argued that

TAP never provided any documentation of actual damages it claimed to have suffered

as a result of Sabia's alleged breach of the employment contract.

On August 17, 2006, the bankruptcy court held an evidentiary hearing and status

conference concerning the disputed TAP claim.  At this hearing, the bankruptcy court

discussed with counsel for TAP the specifics of TAP's damages claim.  Both liquidated

damages under the contract and actual damages were discussed at this hearing.  The

quotations from the transcript, cited by the appellants in their opening brief, give a sense

of this discussion.  *Opening brief* [#22], filed October 10, 2007, pp. 13 -18.

After the August 17, 2006, hearing, Sabia submitted written discovery requests to

TAP.  One of the requests asked TAP to itemize the monetary damages claimed by

TAP, exclusive of any claim for liquidated damages.  ***In re Anthony James Sabia***,

Case No. 05-45759 SBB (Bankr. D. Colo.), *Sabia's motion for attorney fees* [#174], filed

January 16, 2007, Attachment B, interrogatory and response 15. This request asked

TAP to state the factual basis for its claimed monetary damages, excluding liquidated

damages, and the method for calculating such damages. *Id.* In response, TAP

indicated that its primary damages claim "is governed by the aforementioned

employment agreement," an apparent reference to TAP's claim for liquidated damages.

However, TAP indicated also that "with respect to other damages, (TAP) states that

discovery is yet ongoing and as such, calculation of such damages is incomplete. A

preliminary calculation will be provided once Debtor responds to discovery propounded

on October 13, 2006." *Id.*

On October 23, 2006, Sabia asked TAP to supplement its response to

interrogatory number 15. *Id.*, Exhibit F. On October 30, 2006, TAP's counsel

responded, saying that "at this point, my client  is unable to calculate completely and

accurately its damages in this case." *Id.*, Exhibit G. In the same latter, TAP's counsel

indicated that TAP would seek disgorgement of revenues from Sabia, based on Sabia's

alleged operation of a competing enterprise, in the amount of 47,000 dollars. *Id.* The

specific basis for this dollar amount was not specified.

At the December 28, 2006, bench trial, TAP argued that Sabia had breached the

employment agreement by competing with TAP, in violation of paragraph 2 of the

agreement, and by using TAP's confidential information, in violation of paragraph 1 of

the agreement. *December 28, 2006, transcript*, 186:18 - 22; *Appellants' brief* [#22], filed

October 10, 2007, Appendix C, pp. 4 - 5 (Employment Agreement), ¶ ¶ 1 - 2.

Paragraph 5 of the Employment Agreement provides for liquidated damages for a

violation of the covenant not to compete. *Id.*, ¶ 5.

During TAP's presentation of its case, TAP sought to introduce a summary of TAP's revenues by calendar year. Sabia objected to the admission of this evidence, arguing that gross revenues are not evidence of lost profits or lost net revenues, and that TAP had not produced any documents evidencing TAP's gross revenues in discovery. The bankruptcy court sustained Sabia's objections and excluded this evidence. *December 28, 2006, transcript*, 56:9 - 58:14.

After TAP completed the presentation of its case, Sabia moved for judgment in his favor, arguing that (1) TAP failed to establish that the agreement's covenant not to compete was enforceable under the Colorado statute that governs covenants not to compete; (2) Sabia did not breach the agreement; (3) the liquidated damages provision was unenforceable; and (4) TAP failed to introduce any admissible evidence of actual damages. *Id.*, 168:23 - 181:3.

The bankruptcy court granted Sabia's motion. The court held that the covenant not to compete was not enforceable under §8-2-113, C.R.S., because Sabia was not an executive or management level officer or employee. *December 28, 2006, transcript*, pp. 194 -195. The court held also that the liquidated damages provision was unenforceable because it was harsh and punitive and bore no reasonable relationship to actual damages that reasonably and fairly could have been computed at the time the contract was executed. *Id.* In addition, the bankruptcy court concluded that TAP failed to prove that Sabia had breached the confidentiality provision of the Employment Agreement and that it failed to prove that it had suffered any damages. *Id.*

At the conclusion of the December 28, 2006, trial, the bankruptcy court invited the debtor to file a fee application concerning the trial. The debtor filed a fee application. Ultimately, the bankruptcy court imposed a substantial monetary sanction

against TAP and its counsel based on TAP's prosecution of its proof of claim. The

bankruptcy court awarded to counsel for the debtor 27,916.96 dollars in fees and costs

as a sanction against TAP and its counsel. The award of sanctions was based on the

bankruptcy court's conclusion that "(s)imply put, the claim and prosecution thereof, were

not demonstrated to be warranted under the law and did not have evidentiary support

under the law. The claim appears to have been presented simply as a personal matter,

or retaliation for Debtor's resignation from TAP, or perhaps to harass this Debtor."

*Sanction Order*, p. 6. The bankruptcy court imposed the sanction under 11 U.S.C. §

105(a) and Bankr. Proc. R. 9011.

### IV. ANALYSIS - SANCTION ORDER

In this appeal, TAP challenges the bankruptcy court's award of sanctions on four

bases. First, TAP argues that the bankruptcy court improperly imposed on TAP the

burden of proof to establish that the liquidated damages provision of the Employment

Agreement was enforceable. TAP argues that the bankruptcy court imposed sanctions

on TAP based on TAP's failure to satisfy this burden of proof, even though the burden

should have been borne by the debtor. Sabia agrees that, unless a liquidated damages

provision is facially unenforceable, the party challenging the provision bears the burden

of proof. **Rohauer v. Little**, 736 P.2d 403, 410 (Colo. 1987). The record indicates that

there was confusion among the court and the parties about the allocation of this burden

during the proceedings in the bankruptcy court. To the extent the bankruptcy court

based its imposition of sanctions on TAP's failure to meet this burden of production or

proof, the sanctions were not proper. However, the bankruptcy court cited other bases

for its imposition of sanctions, and those bases are proper.

Second, TAP argues that the bankruptcy court concluded erroneously that TAP

7

had represented that it would produce evidence of actual damages, but then failed to produce any such evidence at trial. TAP argues also that the bankruptcy court's exclusion of any evidence of actual damages at trial was a sufficient sanction for any such misrepresentation, and that any additional sanctions are an abuse of discretion. The bankruptcy court found that an "important and aggravating feature of (the case) was that (TAP) led the Court and the Debtor, and his counsel, to believe that they would eventually produce evidence of actual damages. But the Creditor never produced this evidence." *Sanction Order*, p. 5. Again, when TAP sought to introduce evidence of gross revenues at trial, the court excluded the evidence based on Sabia's objection that the information had not been disclosed in discovery and gross revenues are not relevant evidence of lost profits or lost net revenues.

TAP argues that it did not lead either Sabia or the bankruptcy court to believe that it would produce evidence of actual damages, and, thus, imposition of sanctions on this basis was an abuse of discretion. I have reviewed the portions of the hearing and trial transcripts cited by the parties, as well as the discovery requests and responses cited by the parties. These portions of the record provide ample basis for the bankruptcy court's conclusion that TAP led the court and Sabia to believe that it would produce evidence of actual damages. TAP represented in its responses to discovery requests that it would specify its evidence in support of any claim for actual damages when that evidence became available. No such specification was provided prior to trial. Not only did TAP represent that it would produce such evidence, it sought to introduce evidence of actual damages at trial.

TAP claims also, in essence, that it always was clear that its claim was for liquidated damages only. TAP's representations, outlined above, indicated that its claim

8

was for liquidated damages and possibly for actual damages as well.  It is notable that the employment contract that was the basis of TAP's claims provides for liquidated damages only for violation of the covenant not to compete.  Employment Agreement, ¶ 5.  However, TAP also pursued a claim that Sabia had violated the confidentiality provision of the agreement.  Under the terms of the agreement, liquidated damages were not available for such an alleged breach.  The fair implication to be drawn from TAP's pursuit of a claim based on the confidentiality provision is that TAP was seeking actual damages.

Third, TAP argues that the bankruptcy court did not make concrete findings of fact on which its imposition of sanctions can be based.  Rather, TAP asserts, the factual findings of the bankruptcy court were subjective speculations on which an imposition of sanctions may not be based.  TAP cites the bankruptcy court's conclusion that the "claim appears to have been presented simply as a personal matter, or retaliation for Debtor's resignation from TAP, or perhaps to harass the debtor."  *Sanction Order*, p. 6. I note relevantly that the sentence quoted above was preceded by this sentence: " Simply put, the claim and prosecution thereof, were not demonstrated to be warranted under the law and did not have evidentiary support under the law."  *Id.*  TAP notes also that the bankruptcy court observed, at the conclusion of the trial, that TAP's long delay in filing its lawsuit against Sabia "does conjure up questions or curiosities as to what's really driving this case."  *December 28, 2006, transcript*, pp. 197 - 198.  TAP argues that the bankruptcy court speculated improperly that TAP acted with a bad motive in pursuing its claim against Sabia.

Taken in isolation, the two statements by the bankruptcy court cited by TAP might be read to support the conclusion that the bankruptcy court's factual findings were

speculative.  However, read in the context of the relevant portions of the record before

the bankruptcy court, there is no basis to conclude that the bankruptcy court's factual

findings were speculative.  Again, there is ample evidentiary support in the record for

the bankruptcy court's conclusion that TAP represented that it would produce evidence

of actual damages, but then failed to produce any such evidence at trial.  The lack of

such evidence was fatal to TAP's claim under the confidentiality provision of the

employment agreement.  Properly allocating the relevant burdens of proof, the

bankruptcy court concluded that TAP had not shown that (1) the covenant not to

compete was enforceable under §8-2-113, C.R.S.; (2) that Sabia had breached the

covenant not to compete; (3) that Sabia had breached the confidentiality provision; and

4) that TAP had suffered any actual damages. *Sanction Order*, pp. 3 - 4; *December 28,*

*2006, transcript*, pp. 193 - 195.  In its statement of findings and conclusions from the

bench at the conclusion of the December 28, 2006, bench trial, the bankruptcy court

outlined the evidence presented and the basis for the court's conclusion that TAP's

evidence was insufficient on the key points at issue.  *Id.*  In its subsequent order, the

court concluded that TAP "*never* had a solid claim here.  Simply put, the claim and

prosecution thereof, were not demonstrated to be warranted under the law and did not

have evidentiary support under the law." *Sanction Order*, p. 6 (italics in original).  The

December 28, 2006, transcript, the transcript of the August 17, 2006 hearing, and the

record of discovery requests and responses cited by the parties provide an ample

objective basis for the bankruptcy court's ultimate conclusion that TAP's evidence in

support of its claims was so lacking that TAP's claims were "not warranted under the

law and did not have evidentiary support under the law." *Sanction Order*, p. 6.

Bankruptcy Rule 9011(b)(2) provides that sanctions may be imposed if a party's

claim is not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."  Rule 9011(b)(3) provides that sanctions may be imposed if a party's "allegations or other factual contentions (do not have) evidentiary support . . . ."  With adequate basis in the record, the bankruptcy court found that TAP had violated both of these provisions.  TAP argues that the bankruptcy court must find explicitly that TAP acted in bad faith or with other improper motive before imposing sanctions under Rule 9011.  In support of this contention, TAP cites **FDIC v. Schuchmann**, 319 F.3d 1247, 1252 (10th Cir. 2003), a case addressing 28 U.S.C. § 2412(b), part of the Equal Access to Justice Act (EAJA).  The EAJA is not at issue here, and the holding of this case is not applicable to the present case.  Neither 28 U.S.C. § 105 nor Bankruptcy Rule 9011 include a requirement that bad faith or other bad motive be found before sanctions are imposed.

Fourth, TAP argues that the amount of the sanctions, nearly 28,000 dollars, exceeds the minimum amount necessary to deter the behavior in question, and, thus, is an abuse of discretion.  Again, under the abuse of discretion standard the "'trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"  **Moothart v. Bell**, 21 F.3d 1499, 1504 (10th Cir.1994) (*quoting* **McEwen v. City of Norman**, 926 F.2d 1539, 1553-54 (10th Cir.1991)).  I defer to the trial court's judgment because of its first-hand ability to observe the witnesses and evidence and to assess credibility and probative value.  **Moothart**, 21 F.3d at 1504.

Of course, there is no precise formula to determine the minimum sanction necessary to deter the behavior in question.  The bankruptcy court observed the

11

prosecution of TAP's claim first-hand, and, thus, was in the best position to determine

an appropriate sanction. While the sanction imposed by the bankruptcy court is

substantial, I find no basis in the record of this case to conclude that the amount of the

sanction is in excess of the minimum amount necessary to deter the behavior in

question. Absent a basis to reach that conclusion, I cannot conclude that the

bankruptcy court exceeded the bounds of permissible choice in determining the amount

of the monetary sanction to impose against TAP.

## V. ANALYSIS - CROSS APPEAL

Counsel for the debtor, Kimber Z. Smith and Jay Jester, have filed a cross

appeal in which they challenge the bankruptcy court's order denying certain portions of

the fees sought by the debtor's counsel in their application for allowance of attorney

fees in the debtor's Chapter 13 case. The bankruptcy court's analysis of the fee

application is included in the bankruptcy court's Sanctions Order.

Under 11 U.S.C. § 330, the bankruptcy court must consider certain factors when

examining a fee application submitted by debtor's counsel. The court

> shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the
> completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of
> time commensurate with the complexity, importance, and nature of the
> problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board
> certified or otherwise has demonstrated skill and experience in the

bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). The bankruptcy court may not allow compensation for unnecessary duplication of services, or services that were not reasonably likely to benefit the debtor's estate services that were not necessary to the administration of the case. 11 U.S.C. § 330(a)(4). In this case, the bankruptcy court noted the application of 11 U.S.C. § 330 in its Sanctions Order.

### A. Fees of Jay Jester

Jester handled the debtor's litigation with TAP, including the trial before the bankruptcy court. The bankruptcy court denied Jester's application for attorney fees, because the court already had awarded fees for Jester's work as a sanction against TAP and TAP's counsel. Sanctions Order, pp. 17 - 18. In awarding the bulk of Jester's claimed fees and costs as a sanction, the bankruptcy court concluded essentially that these fees and costs were reasonable and necessary. Jester argues that the bankruptcy court's denial of his fee application is an abuse of discretion because Jester will be left without any award of fees if (1) the district court reverses the bankruptcy court's award of sanctions; or (2) Jester is unable to recover from TAP or its counsel the amounts owed under the award of sanctions.

I affirm the bankruptcy court's award of sanctions. Thus, possibility number one no longer presents a threat to Jester's ability to collect his fees. Possibility number two, Jester's inability to collect his fees by enforcing the bankruptcy court's Sanction Order, is entirely speculative. I conclude that it was not an abuse of discretion for the bankruptcy court to rely on its Sanction Order as a viable means for Jester to collect his

fees. With that reliance, it was not an abuse of discretion for the bankruptcy court to conclude that an award of fees under § 330 was unnecessary.

## B.  Fees of Kimber Z. Smith

The bankruptcy court denied portions of Smith's fee application. First, the bankruptcy court denied fees claimed by Smith in excess of 1,800 dollars for the time period up to and including the Section 341 Meeting of Creditors. *Sanction Order*, p. 18. The bankruptcy court based this partial denial of fees on the fact that counsel had agreed to take the case for a total fee of 1,800 dollars, including post-petition services of representing the debtor at the 341 meeting and the confirmation hearing. *Id.* Smith argues that the bankruptcy court disregarded the fact that his fee disclosure indicates that additional hourly fees will be charged for contested motions proceedings or extended disputes over confirmation and that such additional fees were included in the relevant time period.

Second, the bankruptcy court denied a portion of Smith's claimed fees for the period from November 28, 2005 to August 16, 2006. *Sanction Order*, p. 18. The court concluded that there was an unnecessary delay by the debtor in moving the case forward. *Id.* The court concluded also that it could not ascertain from certain billing entries if the services rendered warrant full compensation "because the entries are vague, incomplete and lumped." *Id.* The court cited four examples of such billing entries. *Id.* Because of the excessive delays and the vague, lumped, and incomplete billing entries, the court reduced Smith's fees for this period by fifty percent. *Id.*

Third, in a chart attached to the Sanction Order, the bankruptcy court denied all fees sought by Smith for fees after August 17, 2006. The court's reason or reasons for the denial of these fees are not stated in the Sanction Order. *Sanction Order*, Appendix

B.

The bankruptcy court's analysis of Smith's attorney fee application and the bankruptcy court's reduction of Smith's claimed fees for the three time periods described above does not include any reference to or analysis of the factors that must be considered under § 330. A denial of Smith's claimed fees that is not based on an analysis of the § 330 factors constitutes an abuse of discretion. I must remand this case and direct that Smith's fee application be analyzed under the § 330 factors. Of course, I have not conducted the analysis required by § 330 in relation to Smith's fee application, and I express no opinion about the results of such an analysis.

## VI.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the ruling of the bankruptcy court imposing sanctions against TAP and its counsel **IS AFFIRMED**;

2.  That the ruling of the bankruptcy court denying the attorney fee application of Jay Jester **IS AFFIRMED**;

3.  That the ruling of the bankruptcy court denying portions of the attorney fee application of Kimber Z. Smith **IS REVERSED**, and the concomitant judgment is **VACATED**; and

4.  That this matter is **REMANDED** to the bankruptcy court with directions to analyze the fee application of Zimber Z. Smith, using the factors enumerated under 11 U.S.C. § 330.

Dated September 24, 2008, at Denver, Colorado.

BY THE COURT:

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**